UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

)
ANGELIC NALUBEGA,                          )
                                           )
        Plaintiff,                         )
                                           )     CIVIL ACTION NO. 1:12-cv-10124-JGD
v.                                         )
                                           )
CAMBRIDGE HOUSING AUTHORITY,               )
                                           )
        Defendant.                         )
_____)


**<u>PLAINTIFF ANGELIC NALUBEGA'S MEMORANDUM IN SUPPORT OF
HER MOTION FOR SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

CONCISE STATEMENT OF UNDISPUTED FACTS ..................................... 3

ARGUMENT ...................................................................................................... 5

I. CAMBRIDGE HOUSING AUTHORITY CANNOT AS A MATTER OF LAW
ESTABLISH (1) THAT MONTEIRO WAS AN UNAUTHORIZED OCCUPANT; OR
(2) THAT A MEMBER OF MS. NALUBEGA'S HOUSEHOLD ENGAGED IN
DRUG-RELATED CRIMINAL ACTIVITY .................................................... 5

    A.    Ms. Nalubega's Section 8 Voucher Termination is Unsupported by Law. ........... 5

        1.    CHA's 1998 Plan fails to define "unauthorized guests or occupants." .......... 6

        2.    CHA may terminate a Section 8 participant only if a household member
engages in drug-related criminal activity ...................................... 6

    B.    Ms. Nalubega's Termination is Not Based on Substantial Evidence.................... 7

        1.    CHA did not have clear rules regarding when an overnight guest like
Monteiro becomes an "unauthorized occupant." ........................... 8

        2.    The conference panel lacked substantial evidence to conclude Monteiro
was an "unauthorized occupant." ................................................. 9

II. CAMBRIDGE HOUSING AUTHORITY VIOLATED MS. NALUBEGA'S
RIGHT TO PROCEDURAL DUE PROCESS AS GUARANTEED BY SECTION
EIGHT REGULATIONS AND THE FOURTEENTH AMENDMENT ...................... 11

    A.    CHA Did Not Provide Adequate Or Timely Notice In Violation Of Well-Settled
Due process Law And CHA's Own Administrative Plans.. ............................... 11

        1.    The pre-termination notice was unreasonably vague. ................................. 11

        2.    The Pre-termination Notice and April Conference Panel Notice were
untimely. ...................................................................................... 13

    B.    CHA Did Not Provide Adequate Written Decisions Setting Forth Factual Findings
And Reasoning. .................................................................................... 14

        1.    The April Conference Panel Decision violates due process........................ 14

        2.    The November Conference Panel also violated due process....................... 16

3.      Requiring more precise Hearing Decisions is not an unreasonable burden. .................................................................................................. 17

C.      CHA did not provide Ms. Nalubega with an impartial decision-maker at the November 2011 Conference Panel Hearing......................................................... 21

CONCLUSION ...................................................................................................................... 23

# TABLE OF AUTHORITIES

CASES

*Basco v. Machin,*
  514 F.3d 1177 (11th Cir. 2008) .......................................................................8, 10, 12, 13, 19
*Bardi v. Mobile Hous. Bd.,*
  2011 U.S. Dist. LEXIS 93767 (S.D. Ala. Aug 22, 2011) ..................................................12, 19
*Brantley v. W. Valley City Hous. Auth.,*
  2009 U.S. Dist. LEXIS 10824 (D. Utah Feb. 4, 2009) ...........................................................16
*Carter v. Lynn Housing Authroity,*
  450 Mass. 626, 880 N.E.2d 778 (Mass. 2008).....................................................................7, 18
*Clark v. Alexander,*
  85 F.3d 146 (4th Cir. 1996) ..................................................................................................13
*Cole v. Metropolitan Council HRA*
  686 N. W.2d 334 (Minn. Ct. App. 2004).................................................................................18
*Colon v. Wagner,*
  462 F. Supp. 2d 162 (D. Mass. 2006) .......................................................................15, 16, 17
*Costa v. Fall River Hous. Auth.,*
   453 Mass. 614, 903 N.E.2d 1098 (Mass. 2009)................................................................19, 20
*Driver v. Hous. Auth. Of Racine Cnty.,*
  289 Wis. 2d 727, 713 N.W.2d 670 (Wis. Ct. App. 2006)........................................................16
*Edgecomb v. Hous. Auth. Of Vernon,*
  824 F. Supp. 312 (D. Conn. 1993).................................................................13, 16, 20, 21
*Goldberg v. Kelly,*
  397 U.S. 254, 90 S. Ct. 1011 (1970)..............................................................8, 14, 17, 22
*Mard. v. Town of Amherst,*
  350 F.3d 184 (1st Cir. 2003)..................................................................................................15
*Merisme v. Bd. Of Appeals on Motor Veh. Liability Policies and Bonds,*
  27 Mass. App. Ct. 470, 539 N.E.2d 1052 (Mass. App. Ct. 1989) ....................................10, 13
*Pratt v. Hous. Auth. For City of Camden,*
  2006 U.S. Dist. LEXIS 70575 (D. N.J. Sept. 27, 2006) .........................................................16
*Salaam v. Comm'r of the Dep't Transitional Assistance,*
  43 Mass. App. Ct. 38, 680 N.E.2d 941 (Mass. App. Ct. 1997) .................................................9
*Williams v. Integrated Cmty. Servs.,*
  303 Wis. 2d 697, 736 N.W.2d 226 (Wis. Ct. App. 2007).......................................................14
*Wojcik v. Lynn Hous. Auth.,*
  66 Mass. App. Ct. 103, 845 N.E.2d 1160 (Mass. App. Ct. 2006) ..........................................13

STATUTES AND REGULATIONS

M.G.L. c. 30A, §§ 14(7), 14(8)(e) .................................................................................................9

M.G.L. c. 249 § 4 .......................................................................................................................6, 9

42 U.S.C. § 1437f ........................................................................................................2, 7

42 U.S.C. § 1983 ..............................................................................................................6

Pub. L. No. 111-203, 124 Stat. 1376 (2010) .................................................................42

24 C.F.R. § 5.100 ..................................................................................................9, 11, 13

24 C.F.R. § 5.403 ......................................................................................................9, 13

24 C.F.R. § 982.1 ..............................................................................................................7

24 C.F.R. § 982.1(a)(1) .................................................................................................2, 7

24 C.F.R. § 982.551(h)(2) ...........................................................................................8, 11

24 C.F.R. § 982.552(c)(1)(i) ..........................................................................................19

24 C.F.R. § 982.552(c)(2) ........................................................8, 10, 11, 13, 14, 17

24 C.F.R. § 982.553(b) ...................................................................................................19

24 C.F.R. § 982.553(b)(3) ................................................................................................2

24 C.F.R. § 982.553(b)(iii) ..............................................................................................9

24 C.F.R. § 982.553(c) ................................................................................2,7, 11, 12

24 C.F.R. § 982.555(a)(1)(v), (e)(3)-(6) ....................................................................8, 15

24 C.F.R. § 982.555(e)(1)(i) ...........................................................................................12

24 C.F.R. § 982.555(e)(4)(i) .....................................................................................21, 22

49 Fed. Reg. 62 at 12,230 (March 29, 1984) ................................................................18

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Angelic Nalubega ("Ms. Nalubega") respectfully submits this Memorandum of Law in Support of her Motion for Summary Judgment.

## **INTRODUCTION**

The Cambridge Housing Authority ("CHA") improperly terminated Ms. Nalubega's Section 8 housing voucher without a sufficient legal or factual basis. Further, CHA's conduct during Ms. Nalubega's termination proceedings denied her of her right due process. Summary judgment is appropriate here because CHA did not, and cannot, establish that Jason Monteiro ("Monteiro") was an unauthorized occupant of Ms. Nalubega's household, or that Ms. Nalubega engaged in drug-related criminal activity (Ms. Nalubega was the only household member).

Section 8 of the Housing Act of 1937, 42 U.S.C. § 1437f, commonly referred to as "Section 8," provides rent subsidies "so eligible families can afford decent safe and sanitary housing." 24 C.F.R. § 982.1(a)(1). Section 8 regulations require CHA to find grounds for termination by a preponderance of the evidence. 24 C.F.R. § 982.553(c). Nonetheless, CHA terminated Ms. Nalubega's Section 8 housing voucher based on conduct that neither Section 8 regulations nor CHA's 1998 Administrative Plan (the "1998 Plan") prohibit, namely that an overnight guest—who was not a member of her household and was there to care for an ailing Ms. Nalubega—possessed and distributed drugs from her apartment. The 1998 Plan neither prohibits overnight guests, nor defines under what circumstances an overnight guest becomes an "unauthorized occupant." Further, Section 8 regulations allow CHA to terminate assistance only for the drug-related conduct of *household* members. *See* 24 C.F.R. §982.553(b)(1)(A). In short, there was no legal basis for CHA's actions.

In addition to the legal flaws in CHA's actions, the undisputed facts of this case do not support CHA's termination of Ms. Nalubega's Section 8 voucher benefits. CHA's decision to terminate rested solely on the vague descriptions of a nearly two-year old police report describing Monteiro's drug arrest. That report cannot reasonably provide the basis on which to terminate a person's Section 8 housing—especially when the report itself is internally inconsistent concerning the facts at issue here (i.e., it provides more than one address for Monteiro, the alleged "unauthorized occupant" responsible for drug-related criminal activity). That document, however, is the only affirmative piece of evidence possessed by CHA. The panels' rejection of Ms. Nalubega's defensive assertions by itself cannot amount to substantial, affirmative, evidence.

Finally, CHA's flawed termination procedures left Ms. Nalubega unprepared to mount an effective defense at every phase of the process, in violation of well-settled constitutional due process standards.  The record evidence confirms:

- the pre-termination notice came *twenty months* after the events at issue;

- the pre-termination notice contained no assertions of fact instead attaching several documents and five pages of Section 8 regulations;

- the notice of the date of Ms. Nalubega's hearing to appeal CHA's decision to terminate benefits came *two days* before the hearing was scheduled to occur;

- the same person presided at both Ms. Nalubega's hearing and *re*-hearing as chairperson—and authored the decisions for both panels; and,

- the hearing decisions themselves provide an inadequate record for appellate review.

Section 8 regulations and constitutional requirements of due process require CHA to provide an appellate process sufficient to allow persons like Ms. Nalubega to mount an informed and effective defense.

## CONCISE STATEMENT OF UNDISPUTED FACTS[1]

Ms. Nalubega is a 25 year-old single mother with a three year-old daughter.  *See* Affidavit of Angelic Nalubega ("Nalubega Aff." at ¶ 1). Prior to the birth of her daughter, in April 2008, CHA issued Ms. Nalubega a Section 8 voucher, and she moved into a one-bedroom apartment in East Cambridge. *Id.* at ¶ 4.

In late 2008, Ms. Nalubega became pregnant. *Id.* at ¶ 7. After a difficult period of pregnancy, she gave birth on May 5, 2009. *Id.* at ¶ 8. However, due to her physical limitations (stemming from that difficult pregnancy), the father of that child, Jason Monteiro, would frequently visit Ms. Nalubega to assist her with cooking, cleaning, grocery shopping, and other tasks. *Id.*

On the night of February 26, 2009, Monteiro visited Ms. Nalubega's apartment to assist her with her daily tasks. *Id.* at ¶ 9. After providing that assistance, Monteiro stayed the night as Ms. Nalubega's guest. *Id.*  In the early morning hours of February 27, 2009, Cambridge Police Department ("CPD") officers entered the apartment, woke up Ms. Nalubega, searched her apartment, and found what they believed to be illegal drugs (marijuana and cocaine) considered to be in Monteiro's possession. *See* Declaration of Evan Panich ("Panich Decl.") at Exh. 12 (Edwards Dep. at 24:2). The police arrested Monteiro and charged him with drug-related crimes. *See id*. at Exh. 13. The police did not arrest Ms. Nalubega. *Id.*  The police report (the "February 2009 Police Report") confirmed that no clothes belonging to Monteiro, except those he was wearing, were found at Ms. Nalubega's apartment. *Id.*

Two months later, in April 2009, Ms. Nalubega was summonsed into Cambridge District Court on drug-related charges relating to the February Incident, but on August 10, 2009 the

---

[1]     Ms. Nalubega incorporates her attached Statement of Material Facts by reference.

charges were terminated *nolle prosequi*.  *See* Panich Decl. at Exh. 15 (Commonwealth's Nolle

Pros.).  Ms. Nalubega has not had contact with Monteiro since he called on his daughter's first

birthday, May 9, 2010. Nalubega Aff. at ¶ 13. Ms. Nalubega does not know where Monteiro is

currently living, and has had no contact with him since that May 2010 phone call. *Id.*

     Nearly two years after the February 2009 arrest of Monteiro at her apartment, on October

28, 2010, Ms. Nalubega received a pre-termination notice from CHA (the "Pre-termination

Notice"). *Id.* at ¶ 16. That notice vaguely stated that CHA was terminating Ms. Nalubega's

voucher for violations of Section 8 regulations. *See* Panich Decl. at Exh. 17. Ms. Nalubega was

left to guess as to why CHA was terminating her benefits. Nalubega Aff. at ¶ 17. Later she

learned that termination stemmed from the February 2009 arrest of Monteiro. *Id.* at ¶ 18.

     On November 4, 2010, Ms. Nalubega requested a hearing before CHA's three-person

Conference Panel[2] to contest her termination. *See* Panich Decl. at Exh. 18 (Request for Hearing).

On April 22, 2011—nearly six months after receiving her pre-termination notice—Ms. Nalubega

received a pre-hearing notice that scheduled her hearing for only six days later, April 28, 2011.

*See* Panich Decl. at Exhibit 21 (Notice of Conference Panel Hearing, Apr. 22, 2011, CHA

00166). Making matters worse, on April 24th, someone from CHA called Ms. Nalubega to move

the hearing to the *next* day, April 25, 2011("April Hearing"). Nalubega Aff. at ¶ 22.  Ms.

Nalubega asked for a continuance to retain counsel. *Id.* at ¶ 27. CHA denied her request.. *Id.* As a

result, she attended the hearing unrepresented. *Id.* at ¶¶ 26-27. The April Hearing's conference

panel upheld the decision to terminate Ms. Nalubega's benefits. *See* Panich Decl. at Exh. 23

(Conference Panel Hearing Results, Apr. 25, 2011, CHA 00165). According to this panel, "[t]he

basis for the termination was the fact that the Housing Choice Voucher holder *allowed* an

---

[2]    CHA allows appeals before "Conference Panels" to comply with the "hearing officer" requirement of 24 C.F.R. §982.555(c)(4).

unauthorized *guest* to inhabit the unit and then to deal illegal drugs from the unit." *See id.* (emphasis added).

In June 2011, Harvard Law School's Tenant Advocacy Project ("TAP") requested that CHA grant Ms. Nalubega another hearing, so that she may be represented by counsel. *See* Panich Decl. at Exh. 24 (email chain including TAP's Rachelle Rubinow, CHA Deputy Executive Director Michael Johnston, and CHA Director of Leased Housing Angelica Benzan). In its request, TAP specifically noted that Ms. Nalubega had unsuccessfully requested a continuance at the April Hearing. *Id.* CHA therefore granted Ms. Nalubega's request for a new hearing. *Id.* at 2.

On November 16, 2011, CHA held Ms. Nalubega's second conference panel hearing (before 3 panelists, one of whom was also on the April 25, 2011 hearing panel) ("November Hearing"). *See* Panich Decl. at Exh. 30 (Conference Panel Results, November 16, 2011, CHA 00160). After that hearing—and more than two years and a half years from the date of Monteiro's arrest at Ms. Nalubega's apartment, and with no other incidents or issues occurring at that apartment since then—the  panel upheld the decision to terminate Ms. Nalubega's benefits. *Id.*

## <u>ARGUMENT</u>

I.  **CAMBRIDGE HOUSING AUTHORITY CANNOT AS A MATTER OF LAW ESTABLISH (1) THAT MONTEIRO WAS AN UNAUTHORIZED OCCUPANT; OR (2) THAT A MEMBER OF MS. NALUBEGA'S HOUSEHOLD ENGAGED IN DRUG-RELATED CRIMINAL ACTIVITY.**

### A. <u>Ms. Nalubega's Section 8 Voucher Termination is Unsupported by Law.</u>

CHA's Family Housing Choice Voucher program is commonly referred to as "Section 8" in reference to Section 8 of the Housing Act of 1937. This federal program provides rent subsidies to eligible families "so [they] can afford decent safe and sanitary housing." 24 C.F.R. § 982.1(a)(1). The U.S. Department of Housing and Urban Development ("HUD") provides

housing assistance funds and funds for administration of the program to state or local

government entities called public housing authorities ("PHA"), which administer the program.

*See Carter v. Lynn Housing Auth.*, 880 N.E.2d 778, 779 n. 1 (Mass. 2008). Because Section 8 is

a federal program, HUD regulations govern the circumstances under which individuals are

eligible for participating in the Section 8 program and the grounds by which PHA's may

terminate participants. *See generally* 24 C.F.R. §§ 982.1 *et seq*. PHA's must also draft an

Administrative Plan consistent with federal regulations to govern the day-to-day operations of

the PHA. 24 C.F.R. § 982.54. Accordingly, CHA drafted the 1998 Plan.  *See* Panich Decl. at

Exh. 4 (1998 Plan).

### 1.  CHA's 1998 Plan fails to define unauthorized "guests" or "occupants."

The panel's April 25, 2011 decision clearly states that Monteiro was a "guest."  That

should end the Court's inquiry into the matter.  But even if the panel meant to find that Monteiro

was unauthorized "occupant," its decision would still be flawed because there is no provision in

CHA's 1998 Plan that defines when a guest is considered an "unauthorized occupant."  This is a

notable omission.  The Administrative Plans put forth by many other municipalities have rules

that specifically address guests. For example, many plans consider guests to be unauthorized

occupants after residing in a participant's unit for (15) days in a one-month period or thirty (30)

days in a one-year period. *See*, *e.g*., *Basco*, 514 F.3d at 1179.  Likewise, CHA's putative

replacement for its Administrative Plan contains such a requirement (the "2012 Plan")—even

though it is absent from the 1998 Plan. *See* Panich Decl. at Exh. 7 (2012 Plan). The 1998 Plan's

only somewhat relevant requirement is that participants report changes in family composition

within thirty (30) days (24 C.F.R. § 982.551(h)(2)). But nowhere does CHA's written policies

specifically address what restrictions there are on guests staying with participants in Section 8

housing. *See* Panich Decl. at Exh. 34 (CHA response to Interrogatory No. 14, identifying

purported guest policy and failing to identify restrictions on guests). CHA claims to have an

*informal* guest policy that provides an overnight guest becomes an unauthorized occupant either

by: (a) staying with a participant for longer than 30 days; or (b) listing the participant's home as

a permanent address. *See* Panich Decl. at Exh. 35.

### 2. CHA may terminate a Section 8 participant only if a household member engages in drug-related criminal activity.

CHA may terminate a Section 8 participant for engaging in drug-related criminal activity

if a *household member* engages in drug-related criminal activity. *See* 24 C.F.R. 982.552(c)(2)

(determination of termination of assistance must be based on "action or failure to act by *members

of the family*") (emphasis added); *see also* 24 C.F.R. § 982.553(b)(iii). Under Section 8

regulations, household members do not include guests. HUD regulations specifically

circumscribe "guests" from the Section 8 "family" or "household." *Compare* 24 C.F.R. § 5.100

(defining guest as "a person temporarily staying in the unit with the consent of a tenant") *with id.*

(defining household as "the family and the PHA-approved live-in aide") *and* 24 C.F.R. § 5.403

(defining family as "a family with or without children. . ."). Moreover, under these rules simple

possession of a drug is not drug-related criminal activity. Drug-related criminal activity is

defined as "the illegal manufacture, sale, distribution, or use of a drug, or the possession of a

drug with intent to manufacture, sell, distribute or use the drug." 24 C.F.R. § 5.100. Similarly,

allowing another individual—including a guest—to engage in drug-related criminal activity in

one's home is not drug-related criminal activity. *See id.*

### B.      Ms. Nalubega's Termination is Not Based on Substantial Evidence.

CHA's decision to terminate Ms. Nalubega's Section 8 benefits was not based on substantial evidence.[3] CHA did not present *any* direct evidence at the hearing that demonstrates that Monteiro was a member of Ms. Nalubega's household under Section 8 regulations, the 1998 Plan, or CHA's purported informal policy, i.e., that he resided at Ms. Nalubega's apartment for more than thirty (30) days or listed her address as his permanent address.[4]  Rather, the basis upon which CHA decided to terminate Ms. Nalubega's housing was the February 2009 Police Report of Monteiro's arrest. *See* Panich Decl. at Exh. 23 (Conference Panel Hearing Results). That report by itself cannot amount to substantial evidence. It is vague, contains second-hand descriptions, and is internally inconsistent as to the facts. In short, it is utterly unreliable hearsay concerning Monteiro's residency. *See Basco,* 514 F.3d at 1182 (finding that hearsay cannot amount to substantial evidence if it is inconsistent on its face; opposing party could not have obtained the information contained in the hearsay prior to the hearing; or that the information has not been recognized by courts as inherently reliable) (internal citations omitted).

---

[3]      A reviewing court must overturn a PHA's decision to terminate a participant's voucher when its decision is not supported by substantial evidence, based upon an error of law, or otherwise not in accordance with the law.  *See* Mass. G.L. c. 249, § 4; Mass. G.L. c. 30A, §§ 14(7), 14(8)(e).  "Evidence is only 'substantial' when a reasonable mind might accept [it] as adequate to support a conclusion."  *Salaam v. Comm'r of the Dep't of Transitional Assistance*, 680 N.E.2d 941, 942 (Mass. App. Ct. 1997) (reversing agency's decision to deny benefits, finding it was not based on substantial evidence because agency lacked sufficient adverse evidence and based its decision on an unreasonable interpretation of welfare regulations).  When determining whether a PHA's decision is supported by substantial evidence, "courts must examine the entire record, and consider whatever detracts from its weight." *Id*. Although the substantial evidence standard is deferential to a PHA, this "deference does not extend to an unreasonable interpretation of its regulations." *Id*.

[4]      CHA did not find that Ms. Nalubega—the only member of her household—personally engaged in drug-related conduct. *See* 24 C.F.R. 982.552(c)(2) (determination of denial or termination of assistance must be based on "action or failure to act *by members of the family*") (emphasis added).

### 1. CHA did not have clear rules regarding when an overnight guest like Monteiro becomes an "unauthorized occupant."

CHA could not have reasonably concluded that Monteiro was an "unauthorized occupant" rather than an overnight guest because Section 8 regulations and CHA's 1998 Plan are silent on the issue of when an overnight guest becomes an unauthorized occupant.[5] CHA claims to have an *informal* guest policy that provides an overnight guest becomes an unauthorized occupant either by: (a) staying with a participant for longer than 30 days; or (b) listing the participant's home as a permanent address. *See* Panich Decl. at Exh. 36 (Benzan Dep. at 60:13 – 63:3). But the record evidence does not show that the conference panels were aware of this informal policy. Ms. Nalubega was not aware. Nalubega Aff. at ¶ 8. Accordingly, even if the informal policy were somehow construed as valid under the law (which it is not), it played no part in the hearing panels' decisions. *See* Panich Decl. at Exhs. 23-30 (Conference panel decisions).

### 2. The conference panel lacked substantial evidence to conclude Monteiro was an "unauthorized occupant."

First and foremost, the conference panel concluded that Monteiro was an "unauthorized guest." *Id.* But even if they meant "unauthorized occupant," Section 8 regulations require that CHA must set forth sufficient evidence to establish a *prima facie* case that an unauthorized person resided at the residence for the proscribed length of time. 24 C.F.R. § 982.553(c). As previously discussed, CHA did not present any evidence at the hearing in this regard.[6]  Instead,

---

[5]     Although a PHA may terminate a Section 8 participant from the program for unauthorized occupants, HUD regulations do not provide time limits for a guest's stay with a Section 8 participant. *See* 24 C.F.R. § 5.100 (defining guest only as someone who stays with the participant "temporarily"); 24 C.F.R. § 982.551(h)(2) (prohibiting participants from allowing unauthorized occupants to live in the unit).

[6]     CHA also considered Ms. Nalubega's testimony at her various hearings—but nothing in that testimony affirmatively supports a finding that Monteiro was an unauthorized occupant. While CHA is free to reject the testimony proffered by Ms. Nalubega, a rejection of evidence does not somehow *create* an affirmative finding of substantial evidence to the contrary.  The burden of proof rests entirely on CHA. *See*, *e.g.*, *Merisme v. Bd. of*

(continued…)

- 9 -

CHA only presented *a description* of a cell phone bill, personal documents, keys, and the trousers Monteiro had worn to the apartment the day before. *See* Panich Decl. at Exh. 13. Further, the February 2009 Police Report is vague and inconsistent on its face as to these items— most notably as to Monteiro's address. *See Basco*, 514 F.3d at 1182-84 (reversing termination where sole evidence in support of termination was facially inconsistent). Specifically, the February 2009 Police Report contains a Booking Report that has Monteiro's address as 12 Harding Street (i.e., Ms. Nalubega' apartment), but the February 2009 Police Report lists Monteiro's permanent address as Howard Street (with no number).[7] *See* Panich Decl. at 13. It is not unreasonable to see this as an error made by the detective drafting the report—as Monteiro was arrested at 12 Harding St.—but it surely cannot be seen as "substantial evidence" that he lived there, particularly in light of the fact that the Cambridge Police Department was then in possession of a then-two week old police report listing a third address (on Wendell Street) for Monteiro. *See* Panich Decl. at Exh. 36 (Edwards dep. at 40:17 – 43:10, suggesting he did not verify the address). Indeed, it is for reasons such as this that case law holds a hearing officer's reliance upon a "description" of evidence similar to this is highly "problematic." *Basco*, 514 F.3d at 1182 n.8 (reversing termination where hearing officer did not consider first-hand evidence).

A hearing panel's reliance on documents not available at the hearing also violates 24 C.F.R. § 982.555(e)(2)(i), which provides that if a PHA does not make a document that is "directly relevant to the hearing" available to a participant before the hearing, "a PHA may not rely on the document at the hearing." *See Badri v. Mobile Hous. Bd.*, 2011 U.S. Dist. LEXIS

---

*Appeals on Motor Veh. Liability Policies and Bonds*, 539 N.E.2d 1052, 1055 (Mass. App. Ct. 1989) (reversing the board's decision that driver was at fault, finding that board's rejection of testimony of driver cannot create substantial evidence to the contrary) (internal citation omitted).

[7]      CHA's Director of Leased Housing Angelica Benzan did not consider – or even notice – the multiple addresses listed for Monteiro in the 2009 police report and booking report when considering whether Monteiro was an unauthorized occupant. *See* Panich Decl. at Exh. 20 (Benzan Dep. at Exh. 130:20 – 131:3).

93767 at *12 (S.D. Ala. Aug. 22, 2011) (finding for terminated participant in part because directly relevant "hearsay documents" were not provided to him before his hearing). Accordingly, all of the documents described in the February 2009 Police Report, but not made available at the panel hearings, should have been excluded from the panels' considerations. The hearing panels' failure to so exclude is reversible error. *See id.*; *Basco*, 514 F.3d at 1184 (11th Cir. 2008) (reversing PHA's decision to terminate, finding two police reports that contained unreliable hearsay and inconsistent information could not legally establish that an unauthorized occupant resided in participant's unit); *Edgecomb v. Hous. Auth. of Vernon*, 824 F. Supp. 312, 315-16 (D. Conn. 1993) (reversing PHA's decision to terminate, finding police report that contained multi-layer hearsay was not sufficiently reliable to amount to substantial evidence); *Merisme v. Bd. of Appeals on Motor Veh. Liability Policies and Bonds*, 539 N.E.2d 1052, 1054 (Mass. App. Ct. 1989) (reversing decision of board, finding hearsay testimony in police report is not substantial evidence because it lacked "indicia of reliability and probative value" to support the board's decision).

## II.   CAMBRIDGE HOUSING AUTHORITY VIOLATED MS. NALUBEGA'S RIGHT TO PROCEDURAL DUE PROCESS AS GUARANTEED BY SECTION 8 REGULATIONS AND THE FOURTEENTH AMENDMENT.

The federal courts recognize that a recipient of Section 8 assistance has a subsistence interest in this home that is protected by the Fourteenth Amendment's due process standards outlined in *Goldberg v. Kelly*, 397 U.S. 254, 266-71 (1970), and which federal regulations have implemented. Thus, if a PHA seeks to terminate an individual's participation in the Section 8 Voucher Program, it must provide the participant with, *inter alia*, the following procedural safeguards:

1.      timely and informative notice of the reasons for termination;

2.      the right to an impartial decision maker;

3.      the right to a written decision setting out factual findings and reasoning;

4.      the opportunity to present evidence, and to confront and cross-examine witnesses; and

5.      the right to representation by counsel.

*See* 24 C.F.R. § 982.555(a)(1)(v), (e)(3)-(6); *Goldberg*, 397 U.S. at 267-71. Taken together these procedural safeguards constitute the minimum standard of due process in Section 8 termination proceedings CHA has failed to meet.

### A.      CHA Did Not Provide Adequate Or Timely Notice In Violation Of Well-Settled Due Process Law And CHA's Own Administrative Plans.

#### 1.      The pre-termination notice was unreasonably vague.

Section 8 regulations and the Fourteenth Amendment require timely and adequate notice detailing the reasons for the proposed termination. 24 C.F.R. § 982.555(c)(2); *Goldberg*, 397 U.S. at 267–68. Notices are insufficient where they did not provide a factual statement of the incident which constituted a PHA's grievance. *See Colon v. Wagner*, 462 F. Supp. at 162, 169–70 (D. Mass. 2006) (reversing termination where no factual statement provided). A pre-termination notice must enable the Section 8 participant to prepare rebuttal evidence to introduce at the informal conference, where a decision to terminate is first upheld or reversed. *See id*. at 169 (citing *Mard v. Town of Amherst*, 350 F.3d 184, 189 (1st Cir. 2003)).

Here, CHA left Ms. Nalubega unprepared to present rebuttal evidence at the January 2011 Informal Conference—where CHA's decision to terminate was first upheld—because notice was not sufficiently specific or timely.[8] *See* Panich Decl. at Exh. 17 (pre-termination notice). CHA provided Ms. Nalubega with a one-page pre-termination notice that contained no

---

[8]      Ms. Nalubega does not recall having an informal conference where she was on notice of the specific actions being undertaken against her.  The Court need not address this issue at this time.

factual statement of the incident at issue. *Id.* Rather, without further explanation, CHA only put

an "X" mark in the boxes next to "Fraud," "Illegal Drug Related Activity," "Violent Behavior

Related Activity," and "Illegal Occupant" and cited to broad range of regulations.[9] *Id.*

In similar cases, courts have held such pre-termination notices violate due process. *See*

*Brantley v. W. Valley City Hous. Auth.*, 2009 U.S. Dist. LEXIS 10824, at *15–16 (D. Utah Feb.

4, 2009) (denying PHA's judgment on the pleadings where pre-termination notice was merely

restated the criminal charges brought against participant); *Colon*, 462 F. Supp. at 169–70

(granting motion for preliminary injunction where participant was forced to "guess" what the

charges against her were due to unclear pre-termination notice); *Pratt v. Hous. Auth. for City of

Camden*,  2006 U.S. Dist. LEXIS 70575, at *29 (D. N.J. Sept. 27, 2006) (finding for participant

at summary judgment where pre-termination notice did not explain claims against participant and

participant was forced to "connect[] the dots" in the pre-termination notice); *Edgecomb*, 824 F.

Supp. at 314–15 (same); *Driver v. Hous. Auth. of Racine Cnty.*, 713 N.W.2d 670, 737–40 (Wis.

Ct. App. 2006) (reversing trial court and finding for Section 8 participants where pre-termination

notice was vague).

Similar to the inadequate pre-termination notices in the cases referenced above, CHA's

pre-termination notice here is deficient. First, it provided no written explanation stating factual

basis the for the termination. *See* Panich Decl. at Exh. 17 (pre-termination notice). Second, it did

not indicate that it was Monteiro who allegedly committed the proscribed acts, and that his

conduct could and would be used as a basis for termination. *Id.* Third, it came almost *two* years

after relevant events occurred, leaving Ms. Nalubega to guess as to what events to which it

---

[9]    Without any explanation, CHA attached to the 2011 notice a 2007 police report—from *before* Ms. Nalubega began participating in the Section 8 program, the February 2009 police and booking reports, and five pages of HUD regulations.

pertained. *Id.* In short, CHA expected Ms. Nalubega to connect the dots between the marked

boxes, multiple old police reports, and five pages of federal regulations to discern the precise

reasons for CHA's decision to terminate her benefits. *Id.* That is a clear violation of due process.

*See Pratt*, 2006 U.S. Dist. LEXIS 70575 at *29 (granting the terminated participant summary

judgment, reversing a PHA's decision to terminate, finding that a participant facing termination

is not required to "connect[] the dots" between a pre-termination notice and attached documents

in order to discern the PHA's reasons for termination). *Cf. Colon*, 462 F. Supp. 2d at 169 ("[I]t is

unrealistic to expect homeless families to link the details of shelter warnings they may have

received months earlier with boxes checked off on [a pre-termination] form offering no

specifics.").

### 2.  The Pre-termination Notice and April Conference Panel Notice were untimely.

CHA's notices to Ms. Nalubega also were untimely. *Goldberg* requires "timely" notice,

and more specifically, § 982.555(c) requires that participants be provided with "prompt notice of

termination." 24 C.F.R. § 982.555(c)(2); *Goldberg*, 397 U.S. at 267. As noted above, Ms.

Nalubega received CHA's Pre-termination Notice *twenty* months after the events that CHA

relied upon to terminate her benefits. *See* Panich Decl. at Exh. 17 (pre-termination notice). In all,

approximately two years passed between the incident described in the February 2009 Police

Report and Ms. Nalubega's loss of benefits. Nalubega Aff. at ¶¶ 9, 30.

CHA's April 22, 2011 conference panel hearing notice presented a different timing

problem. Although CHA was content to wait almost two years to begin taking action against Ms.

Nalubega, CHA expected Ms. Nalubega to be ready for her hearing in as little as *two days*.[10]

Nalubega Aff. at ¶ 23. That is a clear violation of due process as such short notice deprived Ms.

---

[10]      Ms. Nalubega asserts that she requested a continuance and was denied. CHA denies this claim. The Court
need not address this issue at this time to grant summary judgment in Ms. Nalubega's favor.

Nalubega of any meaningful opportunity to prepare her case, to consult with counsel, or even to coordinate schedules with counsel and witnesses. *See Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 231 (5th Cir. 1998) (finding that attorney's disbarment violated due process where he had only two days to prepare for his hearing). *See also* Affidavit of Elizabeth Blake at ¶ 3 (affirming that when Ms. Nalubega received notice of her hearing, and when Ms. Nalubega appeared for her hearing, TAP was closed).  CHA should have known that their hearing schedule was inherently unfair. Indeed, CHA's own 2012 Plan mandates that notice of a conference panel hearing be received *30 business days* prior to the hearing date. *See* SUMF at ¶ 14.

**B.  CHA Did Not Provide Adequate Written Decisions Setting Forth Factual Findings And Reasoning.**

Pursuant to 24 C.F.R. § 982.555(e)(6), a conference panel must issue a written decision stating briefly the reasons for the decision. HUD interprets this requirement as follows: "The statement of decision required by the regulation must be *truly informative* as to the reasons for the decision. This would include a short statement of the elements of fact or law on which the decision is actually based." 49 Fed. Reg. 62 at 12,230 (March 29, 1984) (emphasis added). An adequate written decision, regardless of the statutory or regulatory scheme or whether hearing is formal or informal, allows a reviewing court to determine whether a hearing officer has fulfilled his statutory or regulatory obligations. *Carter*, 880 N.E.2d at 785; *Cole v. Metropolitan Council HRA*, 686 N.W.2d 334, 338 (Minn. Ct. App. 2004) ("[T]he overarching concern of the appellate court is that the record be sufficient to facilitate meaningful review.").

**1.  The April Conference Panel Decision violates due process.**

Gerard Clark, a Suffolk University Law School Professor, Chairman of the Board of Commissioners of CHA, and Chairman of *both* of Ms. Nalubega's conference panels

("Commissioner Clark"), drafted both the April and November conference panel decisions.  The

April conference panel decision follows:

> X      The staff decision is affirmed.
>
> Case summary: This is an appeal of a staff decision terminating a Housing
> Choice Voucher. The basis for the termination was the fact that the Housing
> Choice Voucher holder allowed an unauthorized guest to inhabit the unit and
> then to deal illegal drugs from the unit. The unit was raided by the Cambridge
> police with a search warrant and the records indicate extensive drug and
> paraphernalia possession. The participant who has one young child claims that
> she did not know that this dealing was going on from her unit. In review of the
> police report there was a search of the unit and there was mail [*sic*] listed the
> boyfriend [*sic*] name and the participant [*sic*] address. The participant stated she
> had no knowledge of the ex-boyfriends whereabouts currently.  The panel did
> not believe this testimony.

*See* Panich Decl. at Exh. 23 (emphasis added).

This April decision provides this Court with very little to review on appeal as to the

specific regulation(s) or provisions of the 1998 Plan that Ms. Nalubega allegedly violated,

whether the decision is based on a preponderance of evidence, whether the panel even

considered mitigating evidence such as the exculpatory evidence of the *nolle prosequi*, or the

impact of termination on the "young child." *Id.* At best, Ms. Nalubega and this Court must guess

at which one or two or more of the *four* bases of termination in the original staff decision that

this April decision upheld.[11]

CHA's April decision also fell short of minimum due process standards in its

"unauthorized occupant" analysis. First, CHA relied entirely on the police report's description of

what was written on mail found in her apartment without ever examining the evidence first-hand.

---

[11]      CHA's "criminal activity" analysis is particularly vague because Section 8 regulations contain three distinct
categories of "criminal activity" that require vastly different analyses and written findings. *See* 24 C.F.R. §§
982.552(c)(1)(i), 982.553(b).  Further muddying the waters is the fact that CHA's staff decision to terminate
contained two of these three categories, namely "drug-related" and "violent" criminal activity. *Costa v. Fall River
Hous. Auth.*, 903 N.E.2d 1098, 1113-14 (Mass. 2009) (finding PHA's decision violates due process in part because
its decision fails to provide sufficient factual findings as required by the applicable criminal activity regulation,
noting that this omission is problematic because the regulations contain three distinct categories of "criminal
activity").

*Id.* Several jurisdictions have found reliance on report descriptions such as this to be unreliable second-level hearsay. *See*, *e.g.*, *Basco*, 514 F.3d at 1183; *Badri*, 2011 U.S. Dist. LEXIS 93767, at *12–13. Second, the April decision did not contain a cite to Section 8 regulations or the 1998 Plan—nor could it, as neither of these specifically provide when an overnight guest becomes and authorized resident. *See* Panich Decl. at Exh. 23 (conf. panel decision). Thus, CHA's failure to have a cogent Section 8 overnight guest policy makes it impossible for a reviewing court to determine whether CHA's findings were sufficient to terminate Ms. Nalubega's voucher for allowing an unauthorized occupant to inhabit her apartment—rendering any such determination facially arbitrary and unreasonable. *See Costa v. Fall River Hous. Auth.*, 903 N.E.2d 1098, 1113-14 (Mass. 2009) (finding a PHA's conference panel decision with no citations to the regulations governing criminal activity violated due process, in part because it did not provide an adequate record on review).

### 2. The November Conference Panel Decision also violates due process.

As for the November panel decision, it raises more questions than it answers:

> This is the report of a re-hearing of the appeal of the termination of a Housing Choice Voucher. The re-hearing was granted by the Executive Director based on a claim that the voucher holder was not represented by counsel at the original hearing. The only new evidence offered was the testimony of two friends who attested to the voucher holder's good character. The voucher holder repeated her protestations that she did not know that Mr. Monteiro, the father of her only child, was convicted of dealing drugs out of her apartment, based upon drugs and paraphernalia found in the apartment and seized by the police. The panel did not believe her testimony at the last hearing and did not believe it this second time.
>
> The termination of her housing choice voucher is re-affirmed.

*See* Panich Decl. at Exh. 30.

Like the April decision, CHA's November decision cites no legal authority, administrative plan, or standard of review. *Id.* CHA does not define what it means by a "re-

hearing of an appeal" or even mention the February 2009 Police Report. *Id.* CHA's informal policies and formal administrative plan do not provide for a "re-hearing," and CHA never discussed the purpose of the re-hearing internally (e.g., *de novo* review, a redo, or a continuation of the April hearing).[12] *See* Panich Decl. at Exh. 29 (Johnston Dep. at 66:1-2; 75:24-77:3). Further, no determination of whether Monteiro was a guest or an "unauthorized occupant" appear in this decision. *See* Panich Decl. at Exh. 30 (conference panel decision). This leaves Ms. Nalubega and a reviewing court uncertain as to what legal standards, if any, apply to CHA's second decision. *See Costa*, 903 N.E.2d at 1111-14; *Edgecomb*, 824 F. Supp. at 314–15.

### 3.     Requiring more precise Hearing Decisions is not an unreasonable burden.

Thus, for all Ms. Nalubega or this Court can ascertain, the Conference Panel may have misapplied the law, or applied the wrong Administrative Plan to its decision (which is not unreasonable given the undue delay of this matter). One simply cannot tell. Requiring CHA to draft a more precise panel decision would impose no significant burden on the Conference Panel while safeguarding a terminated participant's right to have an adequate record of the termination decision for a possible appeal. *Cf. Edgecomb*, 824 F. Supp. at 314–15 (finding PHA violated a participant's due process rights resulting from deficient notice reasoning that requiring PHA to draft a factual statement of the reasons for termination in its pre-termination notice imposed no undue burden while providing significant due process protections). *See also* Panich Decl. at Exh. 37 (Johnston Dep. at 51:2-5 (stating 2012 Plan imposes no additional burden)).

### C.     CHA failed to provide Ms. Nalubega with an impartial decision-maker at the November 2011 Conference Panel Hearing.

---

[12]     At their depositions, CHA Deputy Executive Director and CHA Director of Leased Housing failed to provide consistent explanations of the procedural posture of the re-hearing. *Compare* Panich Decl. at 29 (Johnston Dep. 66:1-2; 75:24-77:3) *with id.* at 38 (Benzan Dep. 163:20-165:1)

CHA policy dictates that the conference panel members rotate on a regular basis, which is consistent with 24 C.F.R. § 982.555(e)(4)(i), which provides a termination hearing may be conducted by "any person or persons designated by the [PHA], other than a person who made or approved the decision under review or a subordinate of this person." *See* Panich Decl. at Exh. 4 at 22 (1998 Plan). Yet, at the November conference panel, Commissioner Clark *made, approved, and authored* the very decision under review, namely the April conference panel decision. *See* Panich Decl. at Exh. 28 (Benzan Dep. at 165:4-5). That occurrence violates applicable regulations, as Commissioner Clark should have been disqualified from participation in the review of his own panel decision. 24 C.F.R. § 982.555(e)(4)(i).  This is a clear violation of Ms. Nalubega's right to an impartial decision-maker and Section 8 regulations.[13] *See id*.; *Goldberg*, 397 U.S. at 266-71.

## CONCLUSION

For the aforementioned reasons, Ms. Nalubega respectfully requests that this Court grant her summary judgment and re-instate her Section 8 voucher benefit.

---

[13]     Notably, CHA *intended* to staff the November panel in this manner.  CHA's Deputy Executive Director instructed Leased Housing to use the same panel as the panel used in the April hearing. *See* Panich Decl. at Exh. 27 (Johnston deposition testimony). Accordingly, the November conference panel did not cure any deficiencies related to the April conference panel because CHA provided a biased November "re-hearing" panel in violation of Ms. Nalubega's statutory and constitutional rights.

Respectfully submitted by,


/s/  John A. Sten
John A. Sten (BBO #629577)
Jason C. Moreau (BBO #648678)
Jason M. Crow (BBO #678616)
Evan D. Panich (BBO #681730)
McDermott, Will & Emery LLP
Boston, MA 02110
28 State St.
Boston, MA 02109
Tel: (617) 535-4000

*jsten@mwe.com*
*jmoreau@mwe.com*
*jcrow@mwe.com*
*epanich@mwe.com*


Dated:  February 21, 2013

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

Pursuant to Local Rule 7.1(A)(2), the undersigned Counsel for Plaintiff Angelic Nalubega hereby certifies that Counsel for the Plaintiff have conferred with Counsel for the Defendant and have attempted in good faith to resolve or narrow the issues presented in this Motion. Defendant's Counsel have indicated they oppose this Motion.

/s/ Jason Crow_____

## CERTIFICATE OF SERVICE

I, John A. Sten, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 21, 2013.

/s/ John A. Sten_____

DM_US 41216686-3.099744.0117